UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICHARD HARRIS,

    Plaintiff,

v.                                             Case No.:   2:21-cv-646-SPC-NPM

JAMES COTTE and JOHN DOE,

    Defendants.
_____/

## **OPINION AND ORDER**

Before the Court is Defendant James Cotte's Motion to Dismiss Amended Complaint (Doc. 166). The Court has also reviewed the filings relevant to Plaintiff Richard Harris's claim against Defendant John Doe.

### **Background**

Harris is a prisoner of the Florida Department of Corrections (FDOC), and he sued three FDOC officials under 42 U.S.C. § 1983. The Court dismissed the claim against Defendant Gilbert Noe, Cotte defaulted, and Harris has not identified John Doe. In his motion to dismiss, Cotte argues Harris fails to state a claim, raises immunity defenses, and asks the Court to dismiss Harris's requests for declaratory judgment and punitive damages. The Court recounts the factual background as pled in Harris's Amended Complaint, which it must

take as true to decide whether the Complaint states a plausible claim. *See Chandler v. Sec'y Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012).

On September 21, 2017, officer James Cotte was escorting Harris between dormitories in Charlotte Correctional Institution. Cotte and Harris had a "verbal altercation" during the trip, and Cotte told Harris he'd "whoop his ass." (Doc. 132 at 6). When Harris realized what cell Cotte was taking him to, Harris said he could not be housed on the top floor due to medical issues. Cotte and another official identified as John Doe each grabbed an arm and began dragging Harris towards the stairs. Harris resisted by sitting on the ground and telling Cotte and Doe to verify his medical passes. Harris accuses Cotte and Doe of responding by "forcefully mashing [Harris] into the floor, dropping their weight on plaintiff, while bending and pulling his limbs at odd angles." (*Id.*). Harris was handcuffed and did not resist.

By the time the officer-in-charge arrived with a camera to document the use of force, Harris was in severe pain and was screaming that he could not feel his right leg. A nurse evaluated Harris at the scene and recorded a blood pressure of 240 over 180, and Harris was taken to the infirmary in a wheelchair.

Dr. Noe evaluated Harris, prescribed him a walker, and ordered that he remain in the infirmary for observation. Four days after the incident, Harris's leg was still numb, and the veins in his leg had started turning black. Harris

2

was discharged on October 4, 2017. After Harris left the infirmary, security officers took the walker away from Harris and told him to walk to his cell. Harris could walk on his own before the incident, but at this point he needed the walker. Harris sat on the ground and asked the officers to contact medical. Harris claims the officers used force—he does not elaborate on that—and escorted him back to the medical unit in a wheelchair. After speaking with medical staff, the security officers gave Harris a walker and housed him in an "ADA/single man cell." (*Id.* at 8).

Harris was then transferred to the South Florida Reception Center for further treatment. He told the medical director, Dr. Abia, that he began using the walker after the September 21, 2017 use of force, and that his right leg was completely numb. Dr. Abia referred Harris to an outside specialist because Harris's condition seemed to be getting worse. By January 31, 2018, the veins in Harris's legs were black, he had no feeling in either leg, and he was confined to a wheelchair. Outside specialists treated Harris from December 2017, through December 2019. Harris became so hopeless and depressed about his condition that he attempted suicide three times in 2019.

## Legal Standard

"The entry of default against a defendant, unless set aside pursuant to Rule 55(c), severely limits the defendant's ability to defend the action." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). A defaulted

defendant is deemed to have admitted all well-pleaded factual allegations, so he cannot contest them. *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1382 (11th Cir. 2024). But before a court enters default judgment, it must ensure there is a "substantive, sufficient basis in the pleadings for the relief sought." *Tyco Fire*, 218 F. App'x at 863. At that point, the defaulted defendant "is still entitled to contest the sufficiency of the complaint and its allegations to support the judgment being sought." *Id.*

A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a court can draw a reasonable inference, based on facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)). And a plaintiff must allege more than labels and conclusions amounting to a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

Harris files his Complaint under 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir.

4

2011) (citing *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001).

## Discussion

### A. James Cotte

1. <u>Pleading sufficiency</u>

Harris accuses Cotte of excessive force in violation of the Eighth Amendment. The core judicial inquiry in an excessive-force claim is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). A prisoner asserting an excessive force claim must establish two elements: "the official must have both 'acted with a sufficiently culpable state of mind' (the subjective element), and the conduct must have been 'objectively harmful enough to establish a constitutional violation.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

A claim satisfies the subjective element if the excessive force was "sadistically and maliciously applied for the very purpose of causing harm." *Id.* The Eleventh Circuit has identified several factors courts should consider when determining whether force was applied sadistically of maliciously: "(1)

5

the need to apply force, (2) the relationship between that need and the amount of force applied, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of the forceful response." *Sears v. Warden Okeechobee Corr. Inst.*, 762 F. App'x 910, 915 (2019) (citing *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002).

The objective component "focuses on whether the official's actions were harmful enough or sufficiently serious to violate the constitution." *Sconiers*, 946 F.3d at 1265 (cleaned up). A *de minimis* use of force do not constitute cruel and unusual punishment unless it is "of a sort repugnant to the conscience of mankind." *Id.* at 1265-66. "Instead, the Eighth Amendment prohibits force that offends 'contemporary standards of decency,' regardless of whether 'significant injury is evidence,' though the extent of injury may shed light on the amount of force applied or 'whether the use of force could plausibly have been though necessary.'" *Id.* at 1266 (quoting *Wilkins*, 559 U.S. at 37).

The Court finds that Harris has sufficiently pled an Eighth Amendment claim. Cotte's threat to "whoop his ass" suggests malicious intent, and the Court can reasonably infer from the factual allegations that Cotte did not perceive Harris as a threat and applied an unnecessary amount of force. What is more, the alleged injuries are significant. Harris reports he immediately experience severe pain and elevated blood pressure, plus a persistent loss of feeling in his leg. He received medical treatment for years following the injury,

6

and he lost the ability to walk on his own. The Court denies Cotte's request for dismissal of the Eighth Amendment claim.

### 2. Immunity defenses

Aside from challenging the sufficiency of the complaint and the jurisdiction of the court to enter judgment against him, "a defendant, once a default has been entered against him, is not entitled to raise any other defenses." *Tyco Fire,* 218 F. App'x 860, 864. By defaulting, Cotte waived the defense of qualified immunity.

On the other hand, Eleventh Amendment immunity is jurisdictional, so the Court will address it. Cotte argues Eleventh Amendment Immunity bars Harris from suing him in his official capacity. The Eleventh Amendment states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Absent an abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court. See *Edelman v. Jordan,* 415 U.S. 651, 662 (1974).

"When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal

defendants." *Id.*, 415 U.S. at 663. "Thus, the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Id.* Congress has not abrogated Florida's immunity and Florida has not waived its Eleventh Amendment immunity. See *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990). Consequently, Harris cannot sue Cotte for monetary damages in his capacity as a state official, and the Court will dismiss that claim.

### 3. Declaratory judgment

Harris's amended complaint seeks a declaration that the acts described therein violated his rights. The general rule in the Eleventh Circuit "is that a transfer or release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief." *Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007). Because Harris is no longer incarcerated at Charlotte Correctional Institution, his request for declaratory relief is moot.

### 4. Punitive damages

Harris's amended complaint also seeks punitive damages against Cotte. Cotte argues the Prison Litigation Reform Act—specifically 18 U.S.C. § 3626(a)(1)(A)—bars punitive damages in civil actions challenging the constitutionality of prison conditions. But the Eleventh Circuit has consistently held that the PLRA allows for punitive damages to punish

8

defendants for willful or malicious conduct. *See Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021). The Court will not dismiss Harris's claim for punitive damages.

### B. John Doe

On November 30, 2022, Magistrate Judge Nicholas Mizell granted Harris's request for a third-party subpoena to discover John Doe's identity, ordered the Clerk to issue a blank subpoena to Harris, and extended the deadline to serve him to February 28, 2023. (Doc. 79). Harris directed the subpoena to officials at Suwannee Correctional Institution and returned it to the Clerk for service. (Doc. 91). The Clerk then served the subpoena on the officials. In February 2023, an FDOC attorney notified Harris and the Court that the department was unable to identify John Doe after a thorough review of the relevant records. (Doc. 102). John Doe's identity remains unknown.

The deadline to serve the defendants has long since passed, and it does not appear Harris will be able to identify John Doe. "Proper service of process is a jurisdictional prerequisite." *Fuqua v. Turner*, 996 F.3d 1140, 1154 (11th Cir. 2021). If service is not perfected within 90 days after the complaint is filed or by a court-established deadline, the claims against the unserved defendant must be dismissed. Because John Doe has not been identified and served, the Court does not have jurisdiction over him. Harris's claims against John Doe must be dismissed.

Accordingly, it is

**ORDERED:**

Defendant James Cotte's Motion to Dismiss Amended Complaint (Doc. 166) is **GRANTED in part and DENIED in part**.

1. Plaintiff Richard Harris's official-capacity and declaratory-judgment claims against Cotte are **DISMISSED**.

2. Harris's claims against John Doe and **DISMISSED without prejudice**.

3. The Clerk is **DIRECTED** to terminate John Doe as a party to this case.

**DONE and ORDERED** in Fort Myers, Florida on January 28, 2025.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record